W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellee,

v.

Jack WARDLAW, Appellant.

No. 9490.

United States Court of Appeals Fourth Circuit.

Argued Oct. 6, 1964.

Decided Dec. 23, 1964.

Vaughan S. Winborne, Raleigh, N. C., for appellant.

Robert E. Nagle, Attorney, United States Department of Labor (Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor of Labor, James F. Doherty, Attorney, and Beverley R. Worrell, Regional Attorney, United States Department of Labor, on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Chief Judge:

The Secretary of Labor obtained judgment against Jack Wardlaw in two causes of action based upon violations of the minimum wage provisions of the Fair Labor Standards Act, section 6, 52 Stat. 1062 (1938), 29 U.S.C.A. § 206 (1956). The first cause of action arose from defendant's underpayment of Gay Lynch in the amount of $298.50 and the second was for a similar underpayment of Marie Partin in the sum of $264.61.[1]

The appellant is engaged in the sale of insurance and is licensed to do business in North Carolina. In the summer of 1960, he hired two young women, Lynch and Partin, at his office in Raleigh, North Carolina, to work regularly scheduled workweeks of 43 hours, for which he paid them the base rate of $12 per week. The rate of pay is below the statutory minimum, and from this Wardlaw made deductions at a higher rate for absences. It is undisputed that their normal duties included (1) cutting newspaper clippings and mailing them to persons mentioned in them, (2) folding and addressing for mailing monthly newsletters, approximately 1–2% of which were sent out of

1. 29 U.S.C.A. § 206(a) (1956), in pertinent part, provides:

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) not less than $1 an hour * * *."

state, and (3) addressing and mailing birthday greetings on business cards of the defendant to his business and social "contacts." The birthday card list included aproximately 22,000 names and addresses, and at least 10% of the daily mailings from this list were made to persons outside of North Carolina.

The District Court held that Lynch and Partin were "engaged in commerce." [2]

Wardlaw takes the position that since he holds no license to write insurance in states other than North Carolina, his business is local in nature. He then argues that since he does not engage in interstate activity, his employees necessarily were not "in commerce."

In Mitchell v. Lublin, McGaughy & Asso., 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed. 2d 243 (1959), the Supreme Court summarily dismissed the identical contention that certain employees were not "engaged in commerce" because their employer's activities were essentially local in nature. It stated:

> "Congress deemed the activities of the individual employees, not those of the employer, the controlling factor in determining the proper application of the Act. Here the activities of the employees show clearly that they are 'engaged in commerce' and thus are eligible for the protections afforded by the Act." 358 U.S. at 213, 79 S.Ct. at 265.

■ Thus, the nature of Wardlaw's activities is not the controlling factor. Moreover, even were such an inquiry as to the employer proper, we would have to conclude that Wardlaw's seeking of out-of-state customers by means of promotional mailings constituted interstate rather than purely "local" activity.

■ We hold that Lynch and Partin were "engaged in commerce," since their activities come within the statutory definition of "commerce" as "transportation, transmission, or communication among the several states." 29 U.S.C.A. § 203 (b). Their work was preparing and mailing newspaper clippings, monthly newsletters and business cards imprinted with birthday greetings. Because, as an integral part of Wardlaw's attempt to obtain out-of-state customers, Lynch and Partin addressed and mailed a substantial number of these items to persons outside of North Carolina, they were "engaged in commerce." [3]

Wardlaw also makes the argument that even if Lynch and Partin were "engaged in commerce" he is nevertheless exempt from the statutory minimum wage requirements because he was endeavoring to teach the two young women enough to enable them to determine whether they would be interested in preparing for careers in the insurance business after completion of their high school courses. Such a relationship, he maintains, does not make them employees within the Act's coverage.

■ If we were to accept the explanation that the parties had such an understanding as to the girls' training, this would not be inconsistent with their being "employees" entitled to the statutory minimum wage. This case is not like Walling v. Portland Terminal Co., 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947), where it was held that workers

2. Although the complaint alleged only that Lynch and Partin were "engaged in commerce," the District Court also concluded that they were engaged in the "production of goods for commerce." Since we agree with the District Court's conclusion that Lynch and Partin were "engaged in commerce," we express no opinion as to whether or not they were also engaged in the "production of goods for commerce."

3. Cf. United States v. South-Eastern Underwriters Assn., 322 U.S. 533, 550, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); Associated Press v. National Labor Board, 301 U.S. 103, 128, 57 S.Ct. 650, 81 L. Ed. 953 (1937); Mitchell v. Aetna Finance Company, 144 F.Supp. 528 (D. R.I.1956), affirmed, 247 F.2d 190 (1st Cir. 1957); Durkin v. Joyce Agency, 110 F.Supp. 918 (N.D.Ill.1953), affirmed, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740 (1955).

whose efforts served their own interests exclusively and did not expedite and in fact impeded the business enterprise were not "employees." Here, Wardlaw, no less than Lynch and Partin themselves, benefited from their labors. Their activities served Wardlaw's interests, and indeed were an essential part of his interstate promotional activities. In these circumstances, it would violate the letter and the spirit of the Act to hold that Lynch and Partin were not "employees."

Further, Wardlaw's argument ignores the admonition of the Supreme Court in Portland Terminal:

> "Without doubt the Act covers trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation. * * * This * * * means that employers who hire beginners, learners, or handicapped persons, and expressly or impliedly agree to pay them compensation, must pay them the prescribed minimum wage, unless a permit not to pay such minimum has been obtained from the Administrator." 330 U.S. at 151–152, 67 S.Ct. at 641.

The amount in controversy in this case is small, and while it would have been more satisfying if the Secretary, in his brief or on oral argument, had clarified how a judgment in his favor in a case of this order of magnitude furthers the policies of the Act, we must assume that there are administrative reasons he deems sufficient to justify the prosecution of these claims. Certainly the Secretary has caught no shark in this case; yet he may have reasoned that a school of piranhas is also capable of considerable destruction. In any event, it is for us to determine only the Act's scope, since, as Judge Boreman observed in Wirtz v. Modern Trashmoval, Inc., 323 F.2d 451 (4th Cir. 1963), it is the duty of the courts, when called upon, to draw the line between the area of activities regulated by the Act and that left to the states for regulation.

Affirmed.